UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

SHELLI ROSE DEWEY,

    Petitioner,

v.

DWIGHT NEVEN, *et al.*,

    Respondents.

Case No. 3:13-cv-00317-LRH-WGC

ORDER

Introduction

    This action is a petition for writ of habeas corpus by Nevada prisoner Shelli Rose Dewey, who was convicted in 2006, in Nevada's Fourth Judicial District Court, in Elko County, of second-degree murder with use of a deadly weapon. On August 10, 2018, this Court ruled on a motion to dismiss, and dismissed certain of Dewey's claims (ECF No. 69). The action is now before the Court for adjudication of Dewey's remaining claims. The Court will deny Dewey's petition and will deny Dewey a certificate of appealability.

Background

    In its decision on Dewey's direct appeal, the Nevada Supreme Court described the factual background of the case, as revealed by the evidence presented at Dewey's ten-day jury trial, as follows:

>     In the early morning hours of September 12, 2004, Elko Police answered a hysterical "911" call from appellant Shelli Rose Dewey reporting that her husband, Steven, had been stabbed. During the call, Dewey commented three times that she did not know who stabbed Steven.

1

At the scene, Dewey appeared to be intoxicated and was marginally intelligible. Dewey told the police that her husband had been stabbed. The police looked inside the Deweys' pickup truck as well as the surrounding area for a weapon but could not locate one.

Several witnesses reported that Dewey and Steven had been drinking and creating a disturbance a few hours before the stabbing. At some point, the bartender asked the couple to leave. About thirty minutes thereafter, a witness reported seeing them arguing in the parking lot. Another witness also reported hearing a loud argument, followed by hysterical crying. This witness investigated the "ruckus" and saw Dewey draped over Steven, who was lying on his back next to or in close proximity to the couple's truck. According to this witness, Dewey was in obvious distress, frantically saying, "Please don't die! Please don't die on me!"

\*   \*   \*

Ultimately, the State charged Dewey with open murder with the use of a deadly weapon.

\*   \*   \*

At trial, the jury convicted Dewey of one count of second-degree murder with the use of a deadly weapon.

*Dewey v. State*, 123 Nev. 483, 485–87, 169 P.3d 1149, 1150–51 (2007) (a copy of the opinion is filed in the record at Exh. 72 (ECF No. 22-2)). Dewey was sentenced to two consecutive terms of life in prison with the possibility of parole after ten years. *See* Judgment of Conviction, Exh. 67 (ECF No. 21-10).

The Nevada Supreme Court affirmed the judgment on November 1, 2007. *See Dewey*, 123 Nev. 483, 169 P.3d 1149 (2007). The court denied Dewey's petition for rehearing. *See* Order Denying Rehearing, Exh. 74 (ECF No. 22-4).

Dewey filed a post-conviction petition for writ of habeas corpus in the state district court on October 18, 2008. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exhs. 77, 83 (ECF Nos. 22-7, 22-13). The court held a six-day evidentiary hearing (*see* Transcripts of Evidentiary Hearing, Exhs. 86–91 (ECF Nos. 22-16, 22-17, 23, 23-1, 23-2, 23-3)), entertained post-hearing briefing (Exhs. 93, 94, 95 (ECF Nos. 24-1, 24-2, 24-3)), and denied the petition on June 28, 2011. *See* Decision, Exh. 97 (ECF No. 24-5); Notice of Entry of Order, Exh. 98 (ECF No. 24-6). Dewey filed a motion for reconsideration. *See* Motion to Alter or Amend Judgment or in the

Alternative, Motion for Reconsideration, Exh. 99 (ECF No. 24-7). The court ruled on that motion on October 17, 2011, issuing an addendum to its June 28, 2011, order, further explaining its denial of certain claims. *See* Addendum, Exh. 104 (ECF No. 24-12); Notice of Entry of Addendum, Exh. 105 (ECF No. 24-13). Dewey appealed, and the Nevada Supreme Court affirmed the denial of Dewey's state habeas petition on April 10, 2013. *See* Order of Affirmance, Exh. 112 (ECF No. 24-20). The court then denied Dewey's petition for rehearing. *See* Order Denying Rehearing, Exh. 114 (ECF No. 24-22).

Dewey filed her initial, nominally *pro se*, federal habeas corpus petition, initiating this action, on June 13, 2013 (ECF No. 1). The Court appointed counsel for Dewey (ECF No. 4), and, with counsel, Dewey filed a first amended petition on November 7, 2014 (ECF No. 16).

Respondents filed a motion to dismiss on May 28, 2015 (ECF No. 41), contending that certain of Dewey's claims were barred by the statute of limitations, that certain of her claims were unexhausted in state court, and that certain of her claims were not cognizable in this federal habeas corpus action. The Court ruled on that motion on October 29, 2015, ruling that Claims 5A, 5B, 5C and 5D of the first amended petition were unexhausted, and directing Dewey to elect, with respect to those claims, whether to abandon them or move for a stay to allow her to exhaust them in state court. *See* Order entered October 29, 2015 (ECF No. 47).

Dewey filed a motion for stay on December 7, 2015 (ECF No. 50). The respondents did not oppose the motion (ECF No. 51), and the Court granted the motion and stayed this action on January 26, 2016, pending further proceedings in state court. *See* Order entered January 26, 2016 (ECF No. 52).

The stay was lifted, upon a motion by Dewey, on July 20, 2017 (ECF No. 58). Dewey then filed a second amended petition for writ of habeas corpus (ECF No. 59) on September 18, 2017. The Court reads Dewey's second amended petition to include the following claims:

Ground 1:  Dewey's "confession was taken in violation of her Fifth, Sixth and Fourteenth Amendment rights to silence, to the assistance of counsel, and to due process under the United States Constitution."

Ground 2A:  Dewey's federal constitutional rights were violated because her trial counsel was ineffective "for failing to present evidence from an audio expert as to whether [Dewey] invoked her right to counsel."

Ground 2B:  Dewey's federal constitutional rights were violated because her trial counsel was ineffective for failing "to present a battered women's syndrome defense to the murder charge."

Ground 2C:  Dewey's federal constitutional rights were violated because her trial counsel was ineffective for failing "to investigate and present an expert witness on linguistics to testify that [she] had not waived her right to an attorney."

Ground 2D:  Dewey's federal constitutional rights were violated because her trial counsel was ineffective "for failing to provide the defense crime scene analyst with all the available evidence and failing to properly question the analyst at trial."

Ground 2E:  Dewey's federal constitutional rights were violated because her trial counsel was ineffective "for failing to seek a spoliation instruction."

Ground 2F:  Dewey's federal constitutional rights were violated because her trial counsel was ineffective "for failing to present testimony from R. Goldie."

Ground 3: Dewey's "Fourteenth Amendment right to due process was violated when she was convicted without sufficient evidence."

Ground 4A:  Dewey's federal constitutional rights were violated because "Instruction No. 13 regarding second degree murder reduced the State's burden of proof of the malice element."

Ground 4B:  Dewey's federal constitutional rights were violated because "Instruction 19 defining deadly weapon unconstitutionally relieved the State of its burden to prove an element of the deadly weapon enhancement."

Ground 5A:  Dewey's federal constitutional rights were violated because her appellate counsel was ineffective for failing to raise the entire legal and factual basis of the claim in Ground 1.

Ground 5B:  Dewey's federal constitutional rights were violated because her appellate counsel was ineffective for failing to raise the entire legal and factual basis of the claim in Ground 3.

Ground 5C:  Dewey's federal constitutional rights were violated because her appellate counsel was ineffective for failing to raise the entire legal and factual basis of the claim in Ground 4A.

Ground 5D:  Dewey's federal constitutional rights were violated because her appellate counsel was ineffective for failing to raise the entire legal and factual basis of the claim in Ground 4B.

Ground 6: Dewey's federal constitutional rights were violated because "cumulative error rendered [her] trial and verdict inherently unreliable."

*See* Second Amended Petition for Writ of Habeas Corpus (ECF No. 59).

On March 9, 2018, Respondents filed a motion to dismiss Dewey's second amended petition, arguing: that Grounds 2A, 2B, 5A, 5B, 5C and 5D are barred by the statute of limitations; that part of Grounds 2B, 5A, 5B, 5C and 5D are barred by the procedural default doctrine; that Grounds 2A, 2D and 2E include allegations not exhausted in state court; and that Ground 6 is not procedurally viable for several reasons. *See* Motion to Dismiss (ECF No. 64). The Court ruled on that motion on August 10, 2018. *See* Order entered August 10, 2018 (ECF No. 69). The Court denied the motion to the extent it was based on the statute of limitations. *See id.* Regarding the questions of exhaustion and procedural default of Ground 2B, the Court denied the motion to dismiss, without prejudice to Respondents again raising the procedural default defense in their answer. *See id.* With respect to Grounds 5A, 5B, 5C and 5D, the Court granted the motion to dismiss and dismissed those claims as procedurally defaulted. *See id.* The Court denied the motion to dismiss with regard to Grounds 2A, 2D, 2E and 6. *See id.*

Respondents filed an answer (ECF No. 77) on February 26, 2019, responding to the remaining claims in Dewey's second amended petition. Dewey filed a reply (ECF No. 82) on April 29, 2019. Respondents filed a response to the reply (ECF No. 83) on May 6, 2019.

Discussion

Standard of Review

A federal court may not grant a petition for a writ of habeas corpus on any claim that was adjudicated on the merits in state court unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by United States Supreme Court precedent, or was based on an

unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. 28 U.S.C. § 2254(d). A state-court ruling is "contrary to" clearly established federal law if it either applies a rule that contradicts governing Supreme Court law or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). A state-court ruling is "an unreasonable application" of clearly established federal law under section 2254(d) if it correctly identifies the governing legal rule but unreasonably applies the rule to the facts of the case. *See Williams v. Taylor*, 529 U.S. 362, 407–08 (2000). To obtain federal habeas relief for such an "unreasonable application," however, a petitioner must show that the state court's application of Supreme Court precedent was "objectively unreasonable." *Id.* at 409–10; *see also Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003). Or, in other words, habeas relief is warranted, under the "unreasonable application" clause of section 2254(d), only if the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Ground 1

In Ground 1, Dewey claims that her confession was taken in violation of her federal constitutional rights. *See* Second Amended Petition (ECF No. 59), pp. 23–33.

Dewey was interviewed by police officers three times after she was taken into custody: first by Detective Larry Kidd and Officer Kamiah Hamilton at about 8:55 a.m. on September 12, 2004, the morning Steven was killed (*see* Transcript, Exh. 117 (ECF No. 24-25)); second, by Kidd, Detective Connie Bauers, and Detective Sergeant Randy Parks at 11:25 a.m. on September 12, 2004 (*see* Transcript, Exh. 118 (ECF No. 24-26)); and third, by Kidd and Bauers at 9:05 a.m. the next morning, September 13, 2004 (*see* Transcript, Exh. 126 (ECF No. 26-2)). In the first interview, while the officers were going over Dewey's rights with her, Dewey said she did not want to speak, and the

6

interview was terminated. *See* Transcript, Exh. 117 (ECF No. 24-25). In the second

interview, Dewey made several incriminating statements. *See* Transcript, Exh. 118

(ECF No. 24-26). In the third interview, Dewey requested an attorney, and the interview

ceased before Dewey said anything of substance about the events of the previous

morning. *See* Transcript, Exh. 126 (ECF No. 26-2).

Dewey claims that the police violated her rights to counsel, to silence, and to due

process of law, under the Fifth, Sixth and Fourteenth Amendments and *Miranda v.*

*Arizona*, 384 U.S. 436 (1966). *See* Second Amended Petition (ECF No. 59), pp. 23–33;

Reply (ECF No. 82), pp. 4–12. Specifically, Dewey claims that in the first interview she

invoked her right to counsel – not just her right to remain silent – and, in interviewing her

a second time without counsel present, the police violated her right to counsel. *See*

Reply (ECF No. 82), pp. 5–8. In support of her argument, Dewey cites *Edwards v.*

*Arizona*, 451 U.S. 477 (1981); *Solem v. Stumes*, 465 U.S. 638 (1984); *Smith v. Illinois*,

469 U.S. 91 (1984); *Connecticut v. Barrett*, 479 U.S. 523 (1987); *McNeil v. Wisconsin*,

501 U.S. 171 (1991); and *Davis v. United States*, 512 U.S. 452 (1994). *Id.* Dewey

claims, further, that in commencing the second interview when and as they did, the

police officers violated her right to remain silent; in support of this argument, Dewey

cites *Edwards; Michigan v. Mosley*, 423 U.S. 96 (1975); and *Arizona v. Roberson*, 486

U.S. 675 (1988). *See* Reply (ECF No. 82), pp. at 8–10. Dewey also claims that her

incriminating statements, made in the second interview, were involuntary, in violation of

her constitutional rights, under *Blackburn v. Alabama*, 361 U.S. 199 (1960); *Schneckloth*

*v. Bustamonte*, 412 U.S. 218 (1973); *Colorado v. Connelly*, 479 U.S. 157 (1986); and

*Withrow v. Williams*, 507 U.S. 680 (1993). *See* Reply (ECF No. 82), pp. at 10–12.

Before her trial, Dewey filed a motion to suppress her statements. *See* Motion to

Suppress, Exh. 14 (ECF No. 17-14). That motion was briefed extensively, and was

addressed at hearings, including three days of evidentiary hearings. *See* Opposition to

Motion to Suppress, Exh. 15 (ECF No. 17-15); Offer of Proof Concerning Statements of

the Defendant, Exh. 16 (ECF No. 17-16); Response to State's Offer of Proof, Exh. 22 (ECF No. 18-5); Supplement to Defendant's Motion to Suppress, Exh. 23 (ECF No. 18-6); Transcript of Hearing, April 7, 2005, Exh. 137 (ECF No. 26-12); Supplement to Opposition to Motion to Suppress, Exh. 24 (ECF No. 18-7); Transcript of Hearing, May 19, 2005, Exh. 139 (ECF No. 26-14); Second Supplement to Opposition to Motion to Dismiss, Exh. 27 (ECF No. 18-10); Transcript of Hearing, May 26, 2005, Exh. 144 (ECF No. 26-19). Dewey and the State presented expert witnesses (Tom Owen for Dewey, and Mark Carey for the State), who created enhanced recordings of the first interview, and who testified about what they could hear on the enhanced recordings. In two written orders, the trial court ruled that Dewey's rights were not violated, and her incriminating statements were admissible. *See* Order Denying Motion to Suppress, Exh. 40 (ECF No. 18-23); Order Re: Statements of the Defendant, Exh. 49 (ECF No. 18-32).

After her conviction, Dewey raised these issues on her direct appeal. *See* Second Amended Petition (ECF No. 59), p. 23; Appellant's Opening Brief, Exh. 68, pp. 17–25 (ECF No. 21-11, pp. 40–48). The Nevada Supreme Court denied Dewey relief on these claims. *See Dewey*, 123 Nev. 483, 169 P.3d 1149 (2007). The court described, as follows, the facts regarding Dewey's statements:

> Although not a suspect at the time, Dewey was taken to the Elko Police Station for an interview on the morning of Steven's death. Once at the police station, Dewey was informed that the interview was being recorded. Detective Larry Kidd of the Elko Police Department advised Dewey of her *Miranda* rights and asked if she understood what *Miranda* rights were. Dewey answered, "I think so." Detective Kidd then had Dewey read the *Miranda* rights card line by line. Dewey initialed each line.
>
> Twice during the initial interview, Detective Kidd explained to Dewey that even if she decided to answer questions "without a lawyer present," she could still stop the interview at any time. After reading Dewey the *Miranda* rights, the detective again confirmed that she understood. Dewey then asked if she was a suspect. Detective Kidd told her that she was. During a brief colloquy, Dewey indicated that she did not want to speak to anyone:
>
> Dewey: Am I a suspect?
>
> [Detective] Kidd: Uh, yes ma'am you are a suspect. Would you just go ahead and write and read that again for me?

Dewey: (inaudible)

[Detective] Kidd: You don't want to talk to anybody?

Dewey: No (inaudible).

[Detective] Kidd: Okay, well if you don't want to answer any question then we won't talk about it. We can't talk to you about it okay.

Dewey: And we'll go home. Take my kid back to the (inaudible). (Inaudible)

The interview ended immediately after the last inaudible response, and Dewey was placed under arrest.

At the jail, approximately two hours after the first interview, other police officers initiated a discussion with Dewey. Before any questioning began, Officer Connie Bauers asked Dewey to read the *Miranda* warnings contained within a waiver form. Dewey again read and signed the waiver form. The officers again told Dewey she could end the interview at any time.

During the second interview, Dewey admitted four times that she had "hit" Steven. Dewey told the police that she held a knife in her hand with the handle pointing outward and the blade flat across her palm. Dewey told the police officers that she intended to punch Steven but instead hit him with the knife. Dewey said the knife might be in the couple's truck. Based upon these comments, the police obtained a warrant, searched the pickup truck, and found a nine-inch knife underneath one of the seats, precisely where Dewey said it "might" be.

The police attempted to interview Dewey the next day at the jail. However, this time, she clearly and unequivocally invoked her right to counsel. Accordingly, the interview immediately ceased.

Ultimately, the State charged Dewey with open murder with the use of a deadly weapon. On a motion to suppress, the district court found that Dewey refused to speak to the police during the first interview, but that she had not clearly invoked her right to counsel.

*Dewey*, 123 Nev. at 486–87, 169 P.3d at 1151.

The Nevada Supreme Court held that, in the first interview, although Dewey invoked her right to remain silent and refused to speak, she did not invoke her right to counsel. *See Dewey*, 123 Nev. at 487–89, 169 P.3d at 1152–53. The court recognized that, under United States Supreme Court precedent, "[a] request for counsel must be, at minimum, 'some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney,'" and "[t]he right to counsel 'must be affirmatively invoked by the suspect' and requires more than an expression of one's

9

desire to remain silent." *Id.*, 123 Nev. at 488–89, 169 P.3d at 1152 (quoting *McNeil*, 501 U.S. at 178, and *Davis*, 512 U.S. at 461). The Nevada Supreme Court ruled that, although Dewey terminated the first interview, telling the police that she did not want to talk to anybody, she did not make an affirmative, unequivocal, unambiguous request for counsel until the third interview. *Dewey*, 123 Nev. at 489, 169 P.3d at 1152–53 (citing *Barrett*). The Nevada Supreme Court determined that the trial court's ruling was supported by substantial evidence and held that Dewey's statements were not obtained in violation of her right to counsel. *Id.*

Next, turning to Dewey's claim that her right to remain silent was violated, the Nevada Supreme Court applied *Roberson*, *Edwards*, and *Mosley*, and held that the police "scrupulously honored" Dewey's invocation of her right to remain silent, and, therefore, after again advising Dewey of her *Miranda* rights and obtaining her waiver of those rights before the second interview, the second interview could proceed. *Dewey*, 123 Nev. at 489–91, 169 P.3d at 1153–54 (citing *United States v. Hsu*, 852 F.2d 407 (9th Cir. 1988)). The court stated:

> In this case, once Dewey invoked her right to remain silent in the first interview, the detective ended the interview. The police waited two hours before they initiated the next interview. The fact that the second interview concerned the same crime is not of great significance under these facts, since Dewey was provided with a fresh set of *Miranda* warnings at the beginning of the second interview. [Footnote: *Grooms v. Keeney*, 826 F.2d 883, 886 (9th Cir. 1987).] Thereafter, Dewey read and signed a waiver form, and the police repeatedly reminded her of her right to stop the interview at any time. Looking at all the relevant circumstances, the immediate cessation of questioning upon Dewey's initial invocation of the right to remain silent, the two-hour time lapse between the interviews, and the careful and repeated *Miranda* warnings, we conclude that the police "scrupulously honored" Dewey's right to remain silent.

*Dewey*, 123 Nev. at 491, 169 P.3d at 1154. The Nevada Supreme Court held, therefore, that Dewey's statements in the second interview were not obtained in violation of her right to remain silent. *Id.*

The Nevada Supreme Court also rejected Dewey's claim that her statements were involuntary. *Dewey*, 123 Nev. at 491–93, 169 P.3d at 1154–55 (citing *Blackburn*). The court stated that "the State bears the burden of proving voluntariness, based on the

10

totality of the circumstances, by a preponderance of the evidence," and went on to rule as follows:

> The circumstances here demonstrate that Dewey's statements were voluntary. She was over thirty years old, a high school graduate with some college education. She home-schooled her children. She had been advised of her constitutional rights before each police interview and twice availed herself of her right to remain silent by refusing to speak to police. She had been in jail for only a couple of hours when the second interview began.
>
> Dewey's conduct during her first interview evinces a clear understanding of how to end an interview. During the third interview, Dewey also demonstrated that she understood her right to seek the assistance of counsel. The evidence suggests that Dewey had a basic understanding of law enforcement and was given more than ample opportunity to clarify her understanding of her *Miranda* rights. Each time, she acknowledged her understanding and signed a waiver of rights [form].
>
> In light of Dewey's education, her demonstrated ability to invoke her Fifth Amendment right to remain silent, and multiple reminders by the police of her absolute right to end the interview, we conclude that her confession was voluntary and the district court did not err in admitting the confession into evidence.

*Id.*, 123 Nev. at 492–93, 169 P.3d at 1155.

This Court finds the Nevada Supreme Court's rulings to be reasonable. Regarding the question whether Dewey invoked her right to counsel in the first interview, it was not unreasonable for the Nevada Supreme Court to conclude that Dewey did not, in that interview, make an unambiguous and unequivocal request for counsel such that a reasonable officer would understand that she wished to request counsel. *See Davis* 512 U.S. at 560–62. The two officers at the first interview, Detective Kidd and Officer Hamilton, testified that they did not hear Dewey request counsel. Testimony of Kamiah Hamilton, Transcript of Hearing on Pretrial Motions, May 19, 2005, Exh. 139, p. 33 (ECF No. 26-14, p. 34); Testimony of Larry Kidd, Transcript of Hearing on Pretrial Motions, May 19, 2005, Exh. 139, p. 42 (ECF No. 26-14, p. 43); Testimony of Larry Kidd, Transcript of Trial, December 13, 2005, Exh. 55, p. 80 (ECF No. 20-1, p. 81). And, while much has been made in this case of the experts' enhancements of the recording of the first interview, the question is not what can be heard on an enhanced recording of the interview; the question is whether a reasonable

police officer at the interview would have heard and understood Dewey to make a request for counsel. This Court concludes that the Nevada Supreme Court reasonably determined, in light of the evidence, and under Supreme Court precedent, that, in the first interview, Dewey did not unambiguously and unequivocally make a request for counsel that police officers should reasonably have heard and understood.

The Court also determines that the Nevada Supreme Court reasonably held that Dewey's right to remain silent was not violated. *See Mosley*, 423 U.S. at 104–05; *Hsu*, 852 F.2d at 409–12. The officers present at the second interview carefully administered the *Miranda* warnings to Dewey, and Dewey indicated unambiguously that she understood them and waived her right to silence. Dewey demonstrated in the first interview (and also in the third interview, for that matter) that she was quite able to stand on her rights and terminate the second interview had that been her intention. Here, reviewing on federal habeas a state court's fact-based ruling, necessarily based on the totality of the circumstances, the deference to be afforded the state court's ruling is "near its apex." *See Sexton v. Beaudreaux*, 138 S.Ct. 2555, 2560 (2018). In view of the totality of the circumstances, it was not unreasonable, under Supreme Court precedent, for the Nevada Supreme Court to rule that the commencement of the second interview, after Dewey invoked her right to silence and terminated the first interview about two hours earlier, was not a constitutional violation.

With respect to the question whether Dewey's statements were voluntary, here again, this Court must give a great deal of deference to the state court's ruling. And, again, it is important to recognize that, in the first interview, Dewey demonstrated that she was able to terminate the interview when that was her wish. Looking at all the circumstances, the Nevada Supreme Court reasonably ruled that Dewey's statements were knowingly, intelligently and voluntarily given.

The Nevada Supreme Court's rulings, denying relief on the claims asserted in Ground 1 were not contrary to, or an unreasonable application of, United States Supreme Court precedent, and were not based on an unreasonable determination of

the facts in light of the evidence presented. The Court will deny Dewey habeas corpus relief on Ground 1.

Ground 2A

In Ground 2A, Dewey claims that her federal constitutional rights were violated because her trial counsel was ineffective for failing to present evidence from an audio expert regarding whether she invoked her right to counsel. *See* Second Amended Petition (ECF No. 59), pp. 37–45. Dewey's claim, here, is that her trial counsel failed to properly present the testimony of the audio expert at the pre-trial evidentiary hearing regarding the motion to suppress her statements, and also at trial. *See id.* Dewey asserts that her trial counsel erred in presenting Owen's testimony telephonically, rather than in person, at the pre-trial hearing, and in not presenting Owen's testimony at trial. *See id.*

Dewey asserted this claim on the appeal in her first state habeas action (*see* Appellant's Opening Brief, Exh. 108, pp. 48–56 (ECF No. 24-16, pp. 60–68)), and the Nevada Supreme Court ruled as follows:

> ... [A]ppellant argues that trial counsel was ineffective for failing to properly present evidence and testimony from an audio expert, which would have demonstrated appellant invoked her right to counsel prior to confessing. Appellant fails to demonstrate that her trial counsel was deficient or that she was prejudiced. The district court concluded, even after listening to the recording enhanced by the audio expert, that appellant failed to demonstrate that she requested a lawyer prior to confessing. Appellant fails to demonstrate a reasonable probability of a different outcome had counsel presented further expert testimony incorporating the enhanced recording. Therefore, the district court did not err in denying this claim.

Order of Affirmance, Exh. 112, p. 5 (ECF No. 24-20, p. 6) (footnote omitted).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel: the petitioner must demonstrate (1) that the attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland*, 466 U.S. at 688, 694. A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. To establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

The Court finds the Nevada Supreme Court's ruling to be reasonable. Dewey's audio expert, Tom Owen, testified by telephone at the hearing on the pre-trial motion to suppress Dewey's statements. *See* Testimony of Tom Owen, Transcript of Hearing on Pretrial Motions, May 19, 2005, Exh. 139, pp. 57–87 (ECF No. 26-14, pp. 58–88). Owen testified that he had enhanced the recording of the first interview, and, on the enhanced recording, he could hear Dewey request counsel. *See id.* at 60–61, 68, 76–77 (ECF No. 26-14, pp. 61–62, 69, 77–78). Owen testified that if he was present at the hearing, and if he played back the enhanced recording, most anybody would be able to hear Dewey say she wanted a lawyer. *See id.* at 76–77 (ECF No. 26-14, pp. 77–78). The trial court, in ruling on the motion to suppress, made clear that the important question was not what an expert could hear on an enhanced recording, but what a reasonable officer could hear at the interview. *See* Order Denying Motion to Suppress, Exh. 40, pp. 5–8 (ECF No. 18-23, pp. 6–9) ("[T]he Court does not reach the merits of which expert to credit in this case.").

Later, in its ruling on this claim in Dewey's first state habeas action, the state district court made this same point again:

> The test is what a reasonable officer would have heard and done; Judge Memeo [trial judge] rightly found that these officers acted reasonably and without artifice or fraud, they could not hear what could not, with the normal ear, be heard. Part of the reason is because a question by one of them "stepped" on an answer, but that was a common feature in this

interview, in fact, in both interviews. The invocation is[,] without the aid of enhancements, unintelligible.

Decision, Exh. 97, p. 6 (ECF No. 24-5, p. 7). In Dewey's first state habeas action, after hearing the in-person testimony of Owen, the state district court ruled that Dewey's "purported invocation of right to counsel was not clear; it was not unequivocal, and it was not unambiguous." *Id.* The Nevada Supreme Court affirmed that ruling. *See* Order of Affirmance, Exh. 112, p. 5 (ECF No. 24-20, p. 6).

Taking into consideration all the evidence, including both the original and enhanced recordings filed by Dewey, this Court determines that the state courts' denial of relief on this claim was reasonable. Dewey makes no showing that having Owen present, in person, to testify and play his enhanced recording, at either the pre-trial hearing or trial, would have had any impact on the outcome of her case. The Nevada Supreme Court's denial of relief on this claim was not contrary to, or an unreasonable application of *Strickland*, or any other Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence presented. The Court will deny Dewey habeas corpus relief on Ground 2A.

Ground 2B

In Ground 2B, Dewey claims that her federal constitutional rights were violated because her trial counsel was ineffective for failing to present a Battered Women's Syndrome (BWS) defense. *See* Second Amended Petition (ECF No. 59), pp. 45–55. Dewey argues that evidence that she suffered from BWS would have buttressed her claim of self-defense and her claim that she did not harbor the malice necessary for murder. In support of her claim, Dewey presents evidence that she suffered terrible abuse by her husband (*see*, *e.g.*, Exhs. 227, 228, 229, 230, 240, 241 (ECF Nos. 28-18, 28-19, 28-20, 28-21, 28-30, 28-31)), and she presents a report (Exh. 223 (ECF No. 28-14)) and evidentiary hearing testimony (Exh. 87, pp. 3–71, 162–228 (ECF No. 22-17, pp. 4–72, 163–229)) of a clinical psychologist, Dr. Joanne Behrman-Lippert. Dewey argues that her trial attorney should have presented such evidence at trial to show that she suffered from BWS.

Dewey raised this issue on the appeal in her first state habeas action (*see* Appellant's Opening Brief, Exh. 108, pp. 29-36 (ECF No. 24-16, pp. 41-48)), and the Nevada Supreme Court ruled as follows:

> ... [A]ppellant argues that her trial counsel was ineffective for failing to investigate and present evidence through a forensic psychologist regarding battered woman's syndrome and the mental issues appellant suffered as a result of domestic violence. Appellant fails to demonstrate that her trial counsel's performance was deficient or that she was prejudiced. Counsel testified that, while he could not recall if he sought expert testimony on battered woman's syndrome, he did investigate whether appellant had been abused by the victim; he could not find credible evidence of such abuse. Based on that testimony, counsel's performance was not deficient. Further, the district court concluded that the expert testimony presented at the evidentiary hearing did not establish that any mental issues appellant suffered from occurred solely due to domestic violence at the hands of the victim and not due to traumas suffered since her incarceration. Appellant fails to demonstrate a reasonable probability of a different outcome had counsel sought to present expert testimony on battered woman's syndrome and its effect on appellant. Therefore, the district court did not err in denying this claim.

Order of Affirmance, Exh. 112, pp. 3–4 (ECF No. 24-20, pp. 4–5).

This Court agrees that Dewey does not demonstrate a reasonable probability of a better outcome at trial if her trial counsel had presented evidence that she suffered from BWS. Dewey's expert, Dr. Behrman-Lippert, explains that BWS, is a syndrome – albeit not one diagnosable under the Diagnostic and Statistical Manual (DSM), which is relied upon by mental health professionals to diagnose mental health disorders – found in individuals who have been abused by their spouses. *See* Testimony of Dr. Behrman-Lippert, Exh. 87, pp. 178–84 (ECF No. 22-17, pp. 179–85). After examining Dewey, Dr. Behrman-Lippert reported that she exhibited traits consistent with BWS, and with Post-Traumatic Stress Disorder (PTSD), a closely related disorder. *See id.* at 31–34, 49, 51–52, 68, 71, 219 (ECF No. 22-17, pp. 32–35, 50, 52–53, 69, 72, 220); Psychological Evaluation of Shelli Dewey, Exh. 223, pp. 12–13 (ECF No. 28-14, pp. 16–17). However, as noted by the Nevada Supreme Court in its ruling on this issue, Dr. Behrman-Lippert was unable to determine the extent to which Dewey's condition was caused by factors other than abuse by her husband. *See* Evidentiary Hearing Testimony of Dr. Behrman-Lippert, Exh. 87, pp. 52–53, 215–17, 226 (ECF

16

No. 22-17, pp.53–54, 216–28, 227). This significantly undermines any potential such evidence would have had to buttress Dewey's defense.

Furthermore – and while not minimizing the trauma to Dewey caused by the abuse evidently inflicted by Steven – this Court determines that there is further reason why evidence of Steven's abuse, and testimony of an expert like Dr. Behrman-Lippert, would not have changed the outcome of the trial in Dewey's favor. Dewey was charged with open murder, potentially including first-degree murder, and she was convicted of second-degree murder. For Dewey to show that she was prejudiced by her trial counsel's failure to present evidence of BWS, she must show that, had such evidence been presented, there would have been a reasonable probability of a manslaughter conviction or an acquittal. *See Strickland*, 466 U.S. at 688, 694.

One of Dewey's theories in her defense was self-defense. However, the evidence at trial weighed heavily against that defense. Before Steven was killed, Dewey and Steven were drinking at a bar in Elko, and witnesses observed an altercation between them in the bar, during which Steven was seen on his back on the floor, with Dewey on top of him, the two of them holding on to each other, and Dewey being more aggressive than Steven. Trial Testimony of Charlene Marie Triste*, December 7, 2005, Exh. 52, p. 125 ("... I heard a large sound and I turned around and they were both on the floor by the juke box."), p. 126 ("He was lying on his back and she was on top of him."), p. 129 ("... [T]hey had a hold of each other pretty good. And she was on top of him and she didn't want to let go."), p. 137 ("I didn't see either one of them strike each other at all."), p. 149 ("[S]he was more intense on it than he was."), p. 154 (Dewey and Steven were holding on to each other's clothing and shoulders; Dewey holding on more than Steven.) (ECF No. 19-1, pp. 126, 127, 130, 138, 150, 155); Trial Testimony of Raymond Ostrander, December 8, 2005, Exh. 53, p. 8 ("He was on his back or on his rear on the floor. She would have been over him."), pp. 9, 20–21, 37, 44–45 (ECF No. 19-2, pp. 9, 10, 21–22, 38, 45–46). The bartender then asked Dewey to leave the bar, and Dewey did so. Trial Testimony of Charlene Marie Triste, December 7, 2005, Exh.

52, pp. 129–30, pp. 148–50 (Bartender kicked Dewey out because she was more trouble than Steven.), p. 155 (ECF No. 19-1, pp. 130–31, 149–51, 156). About five minutes after leaving the bar, Dewey returned, looking angry, whispered something in Steven's ear, and then left again. Trial Testimony of Charlene Marie Triste, December 7, 2005, Exh. 52, pp. 130–31 ("She came storming back in."), p. 147 ("She still looked upset. Mad." "He looked confused, I would say.") (ECF No. 19-1, pp. 131–32, 148). It then appeared to the bartender that Steven was about to leave, the bartender told him that if he left he could not return, and Steven then apologized and left. Trial Testimony of Charlene Marie Triste, December 7, 2005, Exh. 52, p. 131 (ECF No. 19-1, p. 132). About half an hour later, a witness observed, for five or ten minutes, Dewey and Steven in a parking lot near the bar, arguing and yelling at each other. Testimony of Raymond Ostrander, December 8, 2005, Exh. 53, pp. 13–15 ("There was some yelling going on.... There were hand motions. They may have touched each other. There was no blows or anything rough. It didn't seem like it was going to escalate, you know, anything that needed to be intervened, and so I went back to doing what I was doing, shooting pool."), pp. 23–24, pp. 29–31 (Witness may have observed pushing and shoving.), pp. 46–49 (Witness may have told detective that Dewey was being more aggressive than Steven.) (ECF No. 19-2, pp. 14–16, 24–25, 30–32, 47–50.); *see also* Trial Testimony of Shayne Allen Springston*, December 7, 2005, Exh. 52, pp. 72–73 (ECF No. 19-1, pp. 73–74). Then, about 15 to 30 minutes later, after Steven was stabbed, Dewey called 911 but did not tell the dispatcher or the responding police officers that she stabbed him in self-defense, and she did not show the responding police officers the dagger that was used to stab him.

In light of the evidence, and Dewey's actions just before and after Steven was killed – with or without evidence that Dewey suffered from BWS – there was, in this Court's view, no reasonable probability of the jury accepting Dewey's self-defense theory.

The instruction given to the jury regarding self-defense was as follows:

The killing of another person in self-defense is justified and not unlawful when the person who does the killing actually and reasonably believes:

1. That there is imminent danger that the assailant will either kill her or cause her great bodily injury; and

2. That it is absolutely necessary under the circumstances for her to use in self-defense force or means that might cause the death of the other person, for the purpose of avoiding death or great bodily injury to herself.

A bare fear of death or great bodily injury is not sufficient to justify a killing. To justify taking the life of another in self-defense, the circumstances must be sufficient to excite the fears of a reasonable person placed in a similar situation. The person killing must act under the influence of those fears alone and not in revenge.

An honest but unreasonable belief in the necessity for self-defense does not negate malice and does not reduce the offense from murder to manslaughter.

The right of self-defense is not available to an original aggressor, that is a person who has sought a quarrel with the design to force a deadly issue and thus through her fraud, contrivance or fault, to create a real or apparent necessity for making a felonious assault.

However, where a person, without voluntarily seeking, provoking, inviting, or willingly engaging in a difficulty of her own free will, is attacked by an assailant, she has the right to stand her ground and need not retreat when faced with the threat of deadly force.

Actual danger is not necessary to justify a killing in self-defense. A person has a right to defend from apparent danger to the same extent as she would from actual danger. The person killing is justified if:

1. She is confronted by the appearance of imminent danger which arouses in her mind an honest belief and fear that she is about to be killed or suffer great bodily injury; and

2. She acts solely upon these appearances and her fear and actual beliefs; and

3. A reasonable person in a similar situation would believe herself to be in like danger.

The killing is justified even if it develops afterward that the person killing was mistaken about the extent of the danger.

If evidence of self-defense is present, the State must prove beyond a reasonable doubt that the defendant did not act in self-defense. If you find that the State has failed to prove beyond a reasonable doubt that the defendant did not act in self-defense, you must find the defendant not guilty.

19

Instruction No. 22, Exh. 59 (ECF No. 21-2, pp. 28–29); *see also* NRS 200.200; *Hill v. State*, 98 Nev. 295, 847 P.2d 370 (1982). There was no evidence indicating that Steven did anything to cause Dewey to reasonably believe that she was in imminent danger that Steven would kill her or cause her great bodily injury, and that it was absolutely necessary for her to use deadly force against Steven to protect herself. The evidence showed that before the stabbing, in their arguments and in their altercation in the bar, Dewey was at least as aggressive as Steven, and she did nothing to get away from him, but, rather, after the altercation in the bar, returned to the bar and initiated further contact with him. Moreover, after the stabbing, Dewey's 911 call and her interactions with the responding police officers were inconsistent with her claim that she stabbed Steven in self-defense. In this Court's view, whether or not Dewey could show that she suffered from BWS, the State could show beyond a reasonable doubt that she did not act with a reasonable belief in the necessity for self-defense. Therefore, the best Dewey could have done with evidence that she suffered from BWS would have been to help establish that she had an honest but unreasonable belief in the necessity for self-defense. However, under Nevada law, this would not have led to a manslaughter conviction; at best, it would only have supported a second-degree murder conviction, which is what Dewey received at any rate. In short, regarding Dewey's claim of self-defense, this Court determines that evidence that she suffered from BWS would have done her no good.

Moreover, the evidence presented by Dewey does not show that BWS might have led her to accidently stab Steven or might have rendered her unable to harbor the malice necessary for murder. There simply is nothing in either Dr. Behrman-Lippert's report (Exh. 223 (ECF No. 28-14)) or evidentiary hearing testimony (Exh. 87, pp. 3–71, 162–228 (ECF No. 22-17, pp. 4–72, 163–229)) to provide any significant support for such a theory.

The Court determines, then, that Dewey has not shown that evidence that she suffered from BWS could have given rise to a reasonable probability of an outcome more favorable for her than second-degree murder.

This Court determines, therefore, that the Nevada Supreme Court's denial of relief on this claim was not contrary to, or an unreasonable application of *Strickland*, or any other Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence presented. The Court will deny Dewey habeas corpus relief on Ground 2B.

Ground 2C

In Ground 2C, Dewey claims that her federal constitutional rights were violated because her trial counsel was ineffective for failing to investigate and present an expert witness on linguistics to testify that she did not waive her right to counsel. *See* Second Amended Petition (ECF No. 59), pp. 55–56.

Dewey asserted this claim on the appeal in her first state habeas action (*see* Appellant's Opening Brief, Exh. 108, pp. 12–20 (ECF No. 24-16, pp. 24–32)), and the Nevada Supreme Court ruled as follows:

> ... [A]ppellant argues that her trial counsel was ineffective for failing to investigate and present testimony from a linguist who had reviewed her statement to police. Appellant argues that her statements where she appeared to admit guilt were actually questions or hypotheticals made in response to the police's inquiries. An expert in linguistics testified at the evidentiary hearing that appellant's intonation rose at the end of her statements, indicating a question and not a factual statement. For example, appellant asserts that her statement, which appeared to be "I hit him with a knife," was actually a question to the officers, "I hit him with a knife?"
>
> Appellant fails to demonstrate that her counsel's performance was deficient or that she was prejudiced. Testimony presented at the evidentiary hearing demonstrated that use of a linguistics expert in a criminal trial was relatively novel at the time counsel prepared for trial of this matter. Considering the relatively novel use of a linguistics expert in preparation for a criminal trial, appellant fails to demonstrate it was unreasonable for counsel to have not investigated and obtained a linguistics expert to testify in this case. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate that conduct from counsel's perspective at the time.") The district court further

21

> concluded, after listening to the expert's testimony and the recording of appellant's interviews with the police, that the testimony of appellant's expert was insufficient to demonstrate a reasonable probability of a different outcome at trial had counsel obtained an expert in linguistics.
>
> Substantial evidence supports the district court's finding that appellant failed to demonstrate prejudice. Therefore, appellant fails to demonstrate the district court erred in denying this claim.

Order of Affirmance, Exh. 112, pp. 2–3 (ECF No. 24-20, pp. 3–4).

This Court finds this claim to be without merit and determines that the Nevada Supreme Court's ruling was reasonable. Dewey does not point to any precedent suggesting that it is – or, more accurately, was in 2005 – below the standard of reasonable practice for a defense attorney to not call an expert in linguistics to explain a criminal defendant's statement to the police. The jury in this case listened to a recording of Dewey's statement, and could judge for themselves whether, and the extent to which, Dewey's statement was a confession. It was not unreasonable for Dewey's trial counsel not to see the need for any such expert.

Moreover, the Court has carefully considered the evidentiary hearing testimony of the linguistics expert, Robert Leonard, and determines that the Nevada Supreme Court reasonably concluded that there is no reasonable probability that such testimony would have changed the outcome of Dewey's trial. *See* Testimony of Robert Leonard, December 6, 2010, Exh. 86, pp. 132–233 (ECF No. 22-16, pp. 133–234).

The Nevada Supreme Court's denial of relief on this claim was not contrary to, or an unreasonable application of *Strickland*, or any other Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence presented. The Court will deny Dewey habeas corpus relief on Ground 2C.

Ground 2D

In Ground 2D, Dewey claims that her federal constitutional rights were violated because her trial counsel was ineffective for failing to provide the defense crime scene analyst with all the available evidence and for failing to properly question the analyst at trial. *See* Second Amended Petition (ECF No. 59), pp. 56–58.

Dewey raised this issue on the appeal in her first state habeas action (*see* Appellant's Opening Brief, Exh. 108, pp. 21-29 (ECF No. 24-16, pp. 33–41)), and the Nevada Supreme Court ruled as follows:

> ... [A]ppellant argues that her trial counsel was ineffective for failing to provide the defense crime scene analyst with all of the evidence available and failing to ask the analyst proper questions at trial. Appellant fails to demonstrate that her trial counsel's performance was deficient or that she was prejudiced. Counsel testified that he provided the analyst with all of the evidence in his possession, but that a State's witness caused a delay in sending one report to the analyst. The analyst testified at the evidentiary hearing that he believed the victim pulled the knife out of his own chest after he was stabbed; but even after further review of all of the available evidence, the analyst testified that he could not state how the knife got into the victim's chest. Given the analyst's testimony that he could not opine that appellant did not cause the victim's death, appellant fails to demonstrate a reasonable probability of a different outcome at trial had counsel supplied the analyst with additional evidence or asked different questions during the trial. Therefore, the district court did not err in denying this claim.

Order of Affirmance, Exh. 112, p. 3 (ECF No. 24-20, p. 4).

Here again, the Court finds this claim to be without merit. Dewey does not show, in her second amended petition, or in her reply to Respondents' answer, how better preparation of the expert in question, Jon J. Nordby, could have changed the nature of his testimony so dramatically as to raise a reasonable probability of a better outcome at trial for Dewey. *See* Second Amended Petition (ECF No. 59), pp. 56–58; Reply (ECF No. 82), pp. 28–30; *see also* Trial Testimony of Jon J. Nordby, December 15, 2005, Exh. 57, pp. 80–166 (ECF No. 21, pp. 81–167); Evidentiary Hearing Testimony of Jon J. Nordby, December 7, 2010, Exh. 87, pp. 72–160, and December 8, 2010, Exh. 88, pp. 3–95 (ECF No. 22-17, pp. 73–161, and ECF No. 23, pp. 4–96).

The Nevada Supreme Court's denial of relief on this claim was not contrary to, or an unreasonable application of *Strickland*, or any other Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence presented. The Court will deny Dewey habeas corpus relief on Ground 2D.

Ground 2E

In Ground 2E, Dewey claims that her federal constitutional rights were violated because her trial counsel was ineffective for failing to request a jury instruction regarding spoliation of evidence. *See* Second Amended Petition (ECF No. 59), pp. 58–62.

Dewey raised this issue on the appeal in her first state habeas action (*see* Appellant's Opening Brief, Exh. 108, pp. 36–43 (ECF No. 24-16, pp. 48–55)), and the Nevada Supreme Court ruled as follows:

> ... [A]ppellant argues that her trial counsel was ineffective for failing to seek an instruction on the spoliation of evidence that the police failed to collect. Appellant fails to demonstrate that her trial counsel's performance was deficient or that she was prejudiced as appellant fails to demonstrate that any of the evidence she asserts the State should have collected was material – that there is a reasonable probability that the outcome of trial would have been different had the defense had access to the uncollected evidence. *See Daniels v. State*, 114 Nev. 261, 267, 956 P.2d 111, 115 (1998). Therefore, the district court did not err in denying this claim.

Order of Affirmance, Exh. 112, p. 4 (ECF No. 24-20, p. 5).

This claim, too, is without merit. Dewey does not provide, as part of her claim, the jury instruction that she believes her attorney should have requested. *See* Second Amended Petition (ECF No. 59), pp. 62–63. Even after Respondents called attention to this shortcoming of the claim in their Answer (*see* Answer (ECF No. 77), p. 18 n.3), Dewey did not provide the instruction. *See* Reply (ECF No. 82), pp. 30–32.

Furthermore, Dewey makes general allegations regarding alleged deficiencies of the investigation in this case, with respect to the handling of evidence by the police. However, nowhere does Dewey explain in any detail how the alleged mishandling of evidence by the police undermined her defense. The Court agrees with the conclusion of the Nevada Supreme Court, that Dewey has not shown that there is a reasonable probability that the outcome of trial would have been better for Dewey had the defense had access to any evidence that Dewey claims to have been lost.

The Nevada Supreme Court's denial of relief on this claim was not contrary to, or an unreasonable application of *Strickland*, or any other Supreme Court precedent, and

was not based on an unreasonable determination of the facts in light of the evidence presented. The Court will deny Dewey habeas corpus relief on Ground 2E.

Ground 2F

In Ground 2F, Dewey claims that her federal constitutional rights were violated because her trial counsel was ineffective for failing to present testimony from R. Goldie. *See* Second Amended Petition (ECF No. 59), pp. 58–62.

R. Goldie was the owner of the bar where Dewey and Steven had been drinking prior to Steven's death. Goldie testified at the evidentiary hearing in the state habeas action. *See* Evidentiary Hearing Testimony of Ronald Goldie, December 8, 2010, Exh. 88, pp. 107–15 (ECF No. 23, pp. 108–16). He testified that on the morning of Steven's death he was asleep in a motor home outside the bar, when he awoke to hear a female voice screaming "oh, my God; oh, my God; oh, my God." *Id.* at 107–09 (ECF No. 23, pp. 108–10). He testified that he then looked out of the motorhome and saw "a man on the ground and three different people standing around that man." *Id.* at 109 (ECF No. 23, p. 110). He testified further:

> Apparently, something negative or bad had happened, and the female was very upset. And you could tell by the range of her voice and what came out of her that there was some type of shock or – I don't know. You could tell it wasn't natural or right.

*Id.* at 111 (ECF No. 23, p. 112). Dewey claims that her trial counsel was ineffective for not presenting Goldie's testimony at trial.

Dewey raised this issue on the appeal in her first state habeas action (*see* Appellant's Opening Brief, Exh. 108, pp. 56–58 (ECF No. 24-16, pp. 68–70)), and the Nevada Supreme Court ruled as follows:

> ... [A]ppellant argues that trial counsel was ineffective for failing to investigate and present testimony from R. Goldie. Appellant fails to demonstrate that her trial counsel's performance was deficient or that she was prejudiced. Appellant's investigator testified that he investigated Goldie prior to trial and gave the information regarding Goldie to counsel. Further, Goldie's testimony at the evidentiary hearing was similar to that of witnesses who testified at trial. Appellant fails to demonstrate a reasonable probability of a different outcome at trial had further investigation of Goldie been performed or had Goldie's testimony been

presented at trial. Therefore, the district court did not err in denying this claim.

Order of Affirmance, Exh. 112, pp. 5–6 (ECF No. 24-20, pp. 6–7).

Dewey argues that Goldie's testimony would have been helpful to the defense because between the time when Goldie heard the female voice screaming "oh, my God," and the time he looked out, there was insufficient time for Dewey to hide the murder weapon in the truck, as the prosecution suggested she did. *See* Reply (ECF No. 82), p. 34. Dewey argues: "If called at trial, Goldie could have testified that less than a minute after hearing the screams, he looked outside and saw a man on the ground ([Steven]) and saw Shelli and two other men standing over the man on the ground." *Id.* That, however, is a misrepresentation of Goldie's testimony; Goldie did not testify that he looked outside "less than a minute after hearing the screams." *See* Evidentiary Hearing Testimony of Ronald Goldie, December 8, 2010, Exh. 88, pp. 107–15 (ECF No. 23, pp. 108–16). Nowhere in Goldie's evidentiary hearing testimony did he say how long it was between when he heard the screams and when he looked outside. *See id.*

Dewey also argues that Goldie's testimony, that after the stabbing Dewey screamed "oh, my God; oh, my God; oh, my God" would have shown that she did not harbor the malice necessary for murder. *See* Reply (ECF No. 82), p. 34. However, this Court disagrees that Dewey's reaction in that manner after the stabbing shows a lack of malice on her part at the moment of the stabbing. Furthermore, Goldie's testimony regarding Dewey's reaction after the stabbing would have been cumulative of the testimony of other witnesses. *See* Trial Testimony of Cody Lynn Madison, December 7, 2005, Exh. 52, pp. 20–22, 24 (ECF No. 19-1, pp. 21–23, 25); Trial Testimony of Vicki Albin, December 7, 2005, Exh. 52, p. 43 (ECF No. 19-1, p. 44); Trial Testimony of Lee Philip Griswold, December 7, 2005, Exh. 52, pp. 47–49, 52, 54, 62 (ECF No. 19-1, pp. 48–50, 53, 55, 63); Trial Testimony of Shayne Allen Springston, December 7, 2005, Exh. 52, pp. 71–76 (ECF No. 19-1, pp. 72–77). The trial testimony of Shayne Allen Springston is especially notable, as he too was sleeping in a vehicle in the parking lot and awoke to Dewey and Steven arguing and then Dewey screaming. *See* Trial

Testimony of Shayne Allen Springston, December 7, 2005, Exh. 52, pp. 71–76 (ECF No. 19-1, pp. 72–77). Springston, though, heard a door open and close between the time he was awakened and when he got out of the vehicle and saw what was going on. *See id.*

The Court determines that Goldie's testimony would have added nothing of any significant value for the defense. The Nevada Supreme Court's denial of relief on this claim was not contrary to, or an unreasonable application of *Strickland*, or any other Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence presented. The Court will deny Dewey habeas corpus relief on Ground 2F.

Ground 3

In Ground 3, Dewey claims that her federal constitutional rights were violated because she was convicted without sufficient evidence. *See* Second Amended Petition (ECF No. 59), pp. 63–65.

The Due Process Clause of the United States Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). However, a federal court collaterally reviewing a state court conviction for sufficiency of the evidence does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *See Payne v. Borg*, 982 F.2d 335, 338 (9th Cir.1992). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also Payne*, 982 F.2d at 338. "[F]aced with a record of historical facts that supports conflicting inferences," the court "must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *McDaniel v. Brown*, 558 U.S. 120, 133 (2010). The Supreme Court has

emphasized that claims of insufficiency of the evidence "face a high bar in federal habeas proceedings ...." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam).

The Nevada Supreme Court denied Dewey relief on this claim on her direct appeal, stating only: "We have carefully considered these arguments and conclude that they lack merit." *Dewey*, 123 Nev. at 487 n.2, 169 P.3d at 1151 n.2. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 784. In such cases, the federal habeas court must "independently review" the record to determine whether the state court's decision was objectively unreasonable. *See Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

This Court has reviewed the record of the trial in this case and determines that Dewey's claim is meritless. There was ample evidence supporting Dewey's conviction. The Nevada Supreme Court's denial of relief on this claim was not contrary to, or an unreasonable application of *Jackson*, or any other Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence presented. The Court will deny Dewey habeas corpus relief on Ground 3.

Ground 4A

In Ground 4A, Dewey claims that her federal constitutional rights were violated because an instruction given to the jury, Instruction No. 13, regarding second-degree murder, reduced the State's burden of proof with respect to the malice element of the crime. *See* Second Amended Petition (ECF No. 59), pp. 65–67. Instruction No. 13 stated:

> All murder which is not First Degree Murder is Second Degree Murder. Second Degree Murder is:
>
> 1. Murder with malice aforethought, but without the admixture of premeditation and deliberation; or
>
> 2. Where an involuntary killing occurs in the commission of an unlawful act, which in its consequences naturally tends to take the life of a human being or is committed in the prosecution of a felonious intent.

Instruction No. 13, Exh. 59 (ECF No. 21-2, p. 18).

Here, too, on Dewey's direct appeal, the Nevada Supreme Court denied relief on this claim without any analysis. *Dewey*, 123 Nev. at 487 n.2, 169 P.3d at 1151 n.2. The question, then, is whether Dewey shows that there was no reasonable basis for the Nevada Supreme Court's ruling. *See Richter*, 562 U.S. at 784.

As the Court understands Dewey's claim, she asserts, first, that the jury instruction given in her case provided an incorrect definition of second-degree murder under Nevada law. But the Nevada Supreme Court's rejection of that aspect of Dewey's claim is an authoritative ruling by the state supreme court on an issue of state law. This aspect of Dewey's claim is beyond the scope of federal habeas review. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[S]tate court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."), citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975); *see also Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("A mere error of state law ... is not a denial of due process.")

In her reply, Dewey cites *Estelle*, 502 U.S. at 72, for the proposition that "[a]n ambiguity, inconsistency, or deficiency in a jury instruction that infects the entire trial, which in turn results in a conviction, violates due process." Reply (ECF No. 82), pp. 36–37. Dewey does not show, however, that the second-degree murder instruction given in this case was ambiguous, inconsistent, or deficient, such that it infected her entire trial with unfairness.

The Nevada Supreme Court's denial of relief on this claim was not contrary to, or an unreasonable application of *Estelle*, or any other Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence presented. The Court will deny Dewey habeas corpus relief on Ground 4A.

Ground 4B

In Ground 4B, Dewey claims that her federal constitutional rights were violated because Jury Instruction No. 19, defining "deadly weapon," relieved the State of its

burden to prove an element of the deadly weapon enhancement. *See* Second Amended Petition (ECF No. 59), pp. 67–69. Instruction No. 19 stated:

> "Deadly weapon" means:
>
> 1. Any instrument which, if used in the ordinary manner contemplated by its design and construction, will or is likely to cause substantial bodily harm or death;
>
> 2. Any weapon, device, instrument, material or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing substantial bodily harm or death; or
>
> 3. A dangerous or deadly weapon such as a dagger.

Instruction No. 19, Exh. 59 (ECF No. 21-2, p. 24). In her reply, Dewey cites *Sandstrom v. Montana*, 442 U.S. 510 (1979), and *Francis v. Franklin*, 471 U.S. 307 (1985), in support of her claim. Dewey claims, essentially, that it was improper, and a constitutional violation, for the trial court to instruct the jury that a dagger is a deadly weapon.

The Nevada Supreme Court denied Dewey relief on this claim, without analysis. *See Dewey*, 123 Nev. at 487 n.2, 169 P.3d at 1151 n.2. So, here again, the question is whether Dewey shows that there was no reasonable basis for the Nevada Supreme Court's ruling. *See Richter*, 562 U.S. at 784.

To the extent that the Nevada Supreme Court's ruling was that, under Nevada law, a dagger is, as a matter of law, a deadly weapon, that part of the court's ruling, dealing with a matter of state law, would be authoritative, and beyond the scope of federal habeas review. *See Bradshaw*, 546 U.S. at 76.

Moreover, even assuming, for the purpose of analysis, that Instruction No. 19 was erroneous under *Sandstrom*, such error was plainly harmless; there is simply no reasonable debate about whether a dagger is a deadly weapon. Errors in jury instructions involving "omissions or incorrect descriptions of elements are considered trial errors," subject to a harmless error analysis. *Neder v. United States*, 527 U.S. 1, 8–11 (1999). The Nevada Supreme Court could reasonably have determined that any

error in instructing the jury that a dagger is a deadly weapon was harmless. *See*

*Richter*, 562 U.S. at 784.

The Nevada Supreme Court's denial of relief on this claim was not contrary to, or an unreasonable application of *Sandstrom*, *Francis*, or any other Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence presented. The Court will deny Dewey habeas corpus relief on Ground 4B.

Ground 6

Finally, in Ground 6, Dewey claims that her federal constitutional rights were violated because of the cumulative effects of the errors she alleges. *See* Second Amended Petition (ECF No. 59), pp. 71–72. However, as the Court determines that Dewey has not shown there to have been any errors, there are no errors to consider cumulatively, and her claim in Ground 6 fails. The Court will deny Dewey relief on Ground 6.

Certificate of Appealability

The standard for the issuance of a certificate of appealability requires a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c). The Supreme Court has interpreted 28 U.S.C. § 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where, as here, the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077–79 (9th Cir. 2000).

The Court finds that, applying the standard articulated in *Slack*, a certificate of appealability is unwarranted. The Court will deny Dewey a certificate of appealability.

Conclusion

**IT IS THEREFORE ORDERED** that the Petitioner's Second Amended Petition for Writ of Habeas Corpus (ECF No. 59) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner is denied a certificate of appealability.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to enter judgment accordingly.

DATED this 26th day of December, 2019.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE